IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARY COOMBER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 25-cv-00082-LKG |
| ) | |
| v. ) | Dated:  March 20, 2026 |
| ) | |
| WESTMINSTER INGLESIDE KING ) | |
| FARM PRESBYTERIAN ) | |
| RETIREMENT COMMUNITIES, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this civil action, the Plaintiff, Mary Coomber, brings claims for violations of the Maryland Health Care Worker Whistleblower Protection Act (the "MHCWWPA"), Md. Code, Health Occ. § 1-501, *et seq*., the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2615, *et seq.*, the District of Columbia Family Medical Leave Act (the "DCFMLA"), D.C. Code 32-501, *et seq.*, the False Claims Act, 31 U.S.C. § 3730(h) (the "FCA"), and for wrongful discharge, against the Defendants, Westminster Ingleside King Farm Presbyterian Retirement Communities, Inc ("Ingleside"), Ingleside at Home ("IAH") and Ingleside Presbyterian Retirement Community ("Ingleside Rock Creek"), arising from her work as Registered Nurse at Ingleside Rock Creek.  *See generally* ECF No. 10.  The Defendants have moved to dismiss the amended complaint, or, alternatively, to dismiss IAH from the case, pursuant to Fed. R. Civ. P. 12(b)(6) and 21.  ECF No. 13.  The motion is fully briefed. ECF Nos. 13, 13-1, 20, 20-1 and 21. No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' renewed motion to dismiss (ECF No. 13) and (2) **DISMISSES** Counts III and IV of the amended complaint (ECF No. 10).

II.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

   A.    **Factual Background**

In this civil action, the Plaintiff brings claims for violations of the MHCWWPA, the FMLA, the DCFMLA, the FCA and for wrongful discharge, against Defendants Ingleside, IAH and Ingleside Rock Creek, arising from her work as Registered Nurse at Ingleside Rock Creek. *See generally* ECF No. 10.  Specifically, the Plaintiff asserts the following five claims in the amended complaint: (1) retaliation in violation of the MHCWWPA (Count I); (2) wrongful discharge in violation of Washington, DC public policy (Count II); (3) FMLA and DCFMLA retaliation (Count III); (4) FMLA and DCFMLA interference (Count IV); and (5) FCA retaliation (Count V).  *Id*. at ¶¶ 104–246.  As relief, the Plaintiff seeks to recover monetary damages from the Defendants.  *Id*.

The Parties

Plaintiff Mary Coomber is a citizen and resident of the State of Maryland.  ECF No. 10 at ¶ 1.

Defendant Westminster Ingleside King Farm Presbyterian Retirement Community is a Virginia corporation, which has its headquarters located in Rockville, Maryland.  *Id*. at ¶¶ 5–8. Ingleside owns, operates and manages several retirement communities located in Maryland, Virginia and the District of Columbia.  *Id*.

Defendant Ingleside at Home is a Virginia corporation and a wholly owned subsidiary of Ingleside, with its principal office located in Rockville, Maryland.  *Id*. at ¶¶ 9–14.

Defendant Ingleside Presbyterian Retirement Community, Inc. is a wholly owned subsidiary of Ingleside, and it is located in Washington, DC.  *Id*. at ¶ 15–18.

Ms. Coomber's Employment History

As background, the Plaintiff is a licensed registered nurse, and she alleges that she was hired by the Defendants to serve as a wellness nurse at Ingleside at Rock Creek on March 15, 2023.  *Id*. at ¶¶ 29, 54, 61.  While the Plaintiff performed her duties at Ingleside Rock Creek, she alleges that all three Defendants jointly controlled her employment, including her job duties, compensation, and supervision.  *Id*. at ¶¶ 25 and 30–34.  In this regard, the Plaintiff alleges that

---

[1] The facts recited in this memorandum opinion the complaint; the Defendants' motion for summary judgment; the memorandum in support thereof; and the Plaintiffs' response in opposition thereto. ECF Nos. 13, 13-1, 20, 20-1 and 21.  Unless stated otherwise, the facts contained herein are undisputed.

the same executives who control Ingleside also control Ingleside Rock Creek and IAH.  *Id*. at ¶ 26.  The Plaintiff also alleges that the Defendants promised her a $10,000 signing bonus at the time of her hire, but the Defendants never paid this bonus.  *Id*. at ¶¶ 55–59.

The Plaintiff contends that the Defendants engaged in a scheme to misuse her nursing license in violation of Maryland, District of Columbia and federal law.  Specifically, the Plaintiff alleges that, shortly after her hiring, the Defendants proposed that she would be designated as the Client Service Coordinator, or Director ("CSCD") for IAH, despite having been hired only as a wellness nurse.  *Id*. at ¶¶ 62–63.  The Plaintiff alleges that she declined this request and told the Defendants that she wanted to continue in the position of a wellness nurse. *Id*. at ¶ 70.  The Plaintiff also alleges that she did not have the regulatory qualifications to serve as IAH's CSCD.  *Id*. at ¶ 71.

In this regard, the Plaintiff alleges that she informed the Defendants' that she could not perform the duties of Client Service Coordinator or Director, because the District of Columbia Health Care and Community Residence Facility, Hospice and Home Care Licensure Act of 1983, D.C. Code §§ 44-501, *et seq*. (the "D.C. Licensure Act"), and its implementing regulations, require that every home support agency have a qualified Director or Client Service Coordinator who is responsible for coordinating client services, supervising staff, and being continuously available during business hours and on-call after hours and that it would be unethical for the Plaintiff to represent to District of Columbia regulators that she was IAH's Client Service Coordinator or Director while maintaining her position as a wellness nurse.  *Id*. at ¶¶ 72–75.

But, the Plaintiff contends that the Defendants insisted that she also serve as the CSCD and that the Defendants also told her that she would not actually perform the statutory duties for that position.  *Id*. at ¶ 87.  And so, the Plaintiff also contends that her refusal to agree to the Defendants' request constituted protected activity under MHCWWPA.  *Id*. at ¶¶ 111–15.

The Plaintiff also alleges that the Defendants continued to pressure her to perform the duties of the CSCD after IAH's Director, Kathleen Ammirati, left the company.  In this regard, the Plaintiff alleges that Ms. Ammirati left IAH in early 2024, and that the Defendants increased escalated pressure on her to serve as the CSCD, in violation of District of Columbia law and the Medicare Conditions of Participation, 42 C.F.R. § 484, which require agencies to comply with state and local licensure laws.  *Id*. at ¶¶ 76, 84–90 and 229.  In this regard, the Plaintiff alleges

3

that she reasonably believed that allowing the Defendants to list her as the CSCD would result in a violation of law and pose a specific and substantial danger to the public health or safety. *Id*. at ¶¶ 116, 141–150, 223–25. And so, the Plaintiff alleges that her objections to the Defendants' proposal constitute protected activity under District of Columbia and Maryland law and were efforts to stop violations of the False Claims Act. *Id*. at ¶¶ 225–27 and 231–33.

In this regard, the Plaintiff alleges that she engaged in various protected activities between March 15 and 18, 2024, when she made complaints about the "misuse" of her nursing license and reasonably believed that the Defendants' request would violate Maryland, District of Columbia and federal law. *Id.* at ¶¶ 88–97. Specifically, the Plaintiff alleges that the Defendants' actions constituted an effort to defraud Medicaid, by misrepresenting their regulatory compliance in order to retain provider status and receive payment for home health services [from Medicaid]." *Id*. at ¶¶ 225–26.

In addition, the Plaintiff alleges that she notified the Defendants that she would be exercising her rights to protected leave under the FMLA and the DCFMLA, to care for her terminally ill grandfather who was suffering from cancer, on March 4, 2024. *Id*. at ¶ 83. In this regard, the Plaintiff alleges that she requested that her FMLA leave begin on March 14, 2024. *Id*. And so, the Plaintiff contends that her request for FMLA leave constituted protected activity under both federal and DC law. *Id*. at ¶¶ 167–77, 187–91.

Lastly, the Plaintiff alleges that the Defendants terminated her employment during a meeting held on March 18, 2024. *Id*. at ¶¶ 92–94. The Plaintiff also alleges that the Defendants attempted to pressure her to serve as the CSCD during this meeting. *Id*. at ¶¶ 95–97.

The Plaintiff contends that her termination was wrongful and that the Defendants have attempted to fabricate a narrative that she voluntarily resigned her position. *Id*. at ¶¶ 98–99. And so, the Plaintiff also contends that the Defendants unlawfully retaliated against her, by terminating her employment, resulting in the loss of her position, wages, and severe emotional distress and reputational harm. *Id*. at ¶¶ 207–11.

The Plaintiff's Claims

In the amended complaint, the Plaintiff asserts the following five claims against the Defendants: (1) retaliation in violation of the MHCWWPA (Count I); (2) wrongful discharge in violation of Washington, DC public policy (Count II); (3) FMLA and DCFMLA retaliation (Count III); (4) FMLA and DCFMLA interference (Count IV); and (5) False Claims Act

retaliation (Count V). *Id*. at ¶¶ 104–246. With regards to her MHCWWPA claim in Count I of the amended complaint, the Plaintiff alleges that the Defendants violated this law by taking materially adverse actions against her, after she objected to, and refused to, agree to serve as the CSCD. *Id*. at ¶¶ 104–31. In Count II of the amended complaint, the Plaintiff alleges that the termination of her employment constitutes a wrongful discharge, in violation of District of Columbia law. *Id.* at ¶¶ 132–53.

In Count III of the amended complaint, the Plaintiff alleges that the Defendants retaliated against her, by terminating her employment after she requested FMLA leave, in violation of the FMLA and DCFMLA. *Id*. at ¶¶ 154–84. In Count IV of the amended complaint, the Plaintiff also alleges that the Defendants also violated the FMLA and DCFMLA, by interfering with her right to take FMLA leave through the termination of her employment. *Id*. at ¶¶ 185–212. Lastly, the Plaintiff alleges in Count V of the amended complaint that the Defendants retaliated against her in violation of the FCA, by terminating her employment after she raised concerns that the Defendants' proposal would violate the law, including certain Medicaid regulations. *Id*. at ¶¶ 213–47. And so, the Plaintiff seeks to recover monetary damages from the Defendants. *Id*. at ¶¶ 104–247.

### B.    Procedural Background

The Plaintiff commenced this civil action on January 10, 2025. ECF No. 1. On May 14, 2025, the Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 9 and 9-1.

On June 4, 2025, the Plaintiff filed an amended complaint. ECF No. 10. On July 15, 2025, the Defendants filed a renewed motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and 21, and a memorandum in support thereof. ECF Nos. 13 and 13-1.

On September 19, 2025, the Plaintiff filed a response in opposition to the Defendants' motion. ECF Nos. 20 and 20-1. On October 3, 2025, the Defendants filed a reply brief. ECF No. 21.

The Defendants' renewed motion to dismiss having been fully briefed, the Court resolves the pending motion.

### III.    LEGAL STANDARDS

#### A.    Fed. R. Civ. P.  12(b)(6) And 12(d)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  (citing *Twombly*, 550 U.S. at 556).  When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted).  But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ."  *Nemet Chevrolet, Inc.*, 591 F.3d at 255.   And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

In addition, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "must be treated as one for summary judgment" when "matters outside the pleadings are presented" to the Court.  *See* Fed. R. Civ. P. 12(d).  But, the United States Court of Appeals for the Fourth Circuit has held that documents are not considered to be matters outside of the pleadings if they are "explicitly incorporated into the complaint by reference," or are "integral to the complaint and there is no dispute about the document's authenticity."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

#### B.    Fed. R. Civ. P. 21

Rule 21 of the Federal Rules of Civil Procedure addresses misjoinder and nonjoinder of parties and the Rule provides that:

6

> Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

Fed. R. Civ. P. 21.

### C.    The FMLA

The Family Medical Leave Act allows eligible employees to take "12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). Claims can be brought under the FMLA for either interference with an entitlement to FMLA leave, or retaliation for exercising the right to FMLA leave.  29 U.S.C. § 2615(a).

In this regard, the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.* § 2615(a)(1).  The United States Court of Appeals for the Fourth Circuit has explained that "[t]he substantive rights guaranteed by the FMLA are *prescriptive*, and a plaintiff seeking redress for employer interference with an entitlement is only required to show that he or she qualified for the right that was denied." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (citing *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006)) (emphasis in original).  And so, to prevail on an interference with FMLA leave claim, an employee must show: "(1) that he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (citations omitted).

The Fourth Circuit has cautioned, however, that requesting and taking FMLA leave "does not prevent 'an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior.'" *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 249 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595, 209 L. Ed. 2d 732 (2021) (quoting *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 304–05 (4th Cir. 2016)).  The Fourth Circuit has also explained that "an employer does not interfere with the exercise of FMLA rights where it terminates an employee's employment based on the employer's honest belief that the employee is not taking FMLA for an approved purpose." *See Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013) (citing *Kariotis v. Navistar Int'l Transp. Corp.,* 131 F.3d 672, 680-81 (7th Cir.1997)).

The FMLA also provides that "[i]t shall be unlawful for any employer to discharge or in

7

any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).  A claim of retaliatory discharge under the FMLA is analyzed under the same burden-shifting framework that applies to retaliatory discharge claims brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. *Adams*, 789 F.3d at 429 (citations omitted).  And so, an employee claiming FMLA retaliation must make a *prima facie* showing that: (1) he engaged in protected activity; (2) the employer took adverse action against him; and (3) the adverse action was causally connected to his protected activity.  *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 546, 551 (4th Cir. 2006); *see also Sharif*, 841 F.3d at 203 (same).

Because a FMLA retaliation claim is "proscriptive," "employer intent . . . is relevant." *Sharif*, 841 F.3d at 203.  Such "[i]ntent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973)."  *Id.*  In this regard, the Fourth Circuit has held that "[r]etaliation claims . . . require the employee to show that retaliation was a but-for cause of a challenged adverse employment action."  *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016) (internal quotation marks omitted).  The "Fourth Circuit has also explained that, 'for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation.'"  *Clem v. Maryland*, 2022 WL 14912707, at *4 (D. Md. 2022) (quoting *Waag v. Sotera Def. Sol., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017)).

If an FMLA plaintiff puts forth sufficient evidence to establish a *prima facie* case of retaliation, the employer must offer a satisfactory non-discriminatory explanation for the adverse employment action.  *Id.*  "'In reviewing whether an employer's decision is unlawful, the Court's task is not 'to decide whether the reason [for terminating employment] was wise, fair, or even correct, ultimately, so long as it truly was the reason for [the decision].'"  *Id.* at 5 (quoting *Mercer v. Arc of Prince George's Cnty.*, 532 F.App'x 392, 399 (4th Cir. 2013)) (brackets added and in original).  Given this, "[t]o meet its burden of offering a legitimate non-discriminatory reason for the plaintiff's termination, a defendant need only have had an honest belief that the alleged reason or misconduct occurred."  *Id.* (quotation omitted).

A FMLA plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation."  *Yashenko*, 446 F.3d at 551 (internal quotation

marks omitted); *Sharif*, 841 F.3d at 203. "A plaintiff may satisfy this burden by showing either that the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation." *Id.* (citations omitted). But "'a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.'" *Id.* (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000)).

Lastly, the statute of limitations under the FMLA is two years. *See* 29 U.S.C. § 2617(c)(1). But the FMLA allows for this statute of limitations to be extended to three years, if the employer willfully violated the FMLA. *See* 29 U.S.C. § 2617(c)(2). The Fourth Circuit has held that an employer willfully violates the FMLA when the employer knew or showed reckless disregard for whether its conduct violated the FMLA. *See Settle v. S.W. Rodgers Co.*, 182 F.3d 909 at 3 (4th Cir. 1999) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132–35 (1988)). Given this, an FMLA plaintiff must show more than mere negligence in failing to inform them of their FMLA rights. *Id.* (citing *McLaughlin*, 486 U.S. at 133–35). And so, this Court has "generally 'found no willfulness where the employer granted the employee's request for leave.'" *Smith v. BHS Hospital Services Inc.*, 2022 WL 2344156, at \*11 (D. Md. 2022) (quoting *Honeycutt v. Baltimore Cnty.*, 2007 WL 1858691, at \*3 (D. Md. 2007), *aff'd*, 278 Fed. App'x. 292 (4th Cir. 2008)). The Court also analyzes a claim under the DCFMLA under the framework described above. *Dougherty v. Cable News Network*, 396 F. Supp. 3d 84, 106 (D.D.C. 2019).

### D.    The MHCWWPA

The MHCWWPA addresses protections for health care worker whistleblowers and provides that:

> [A]n employer may not take or refuse to take any personnel action as reprisal against an employee because the employee:

(1) Discloses or threatens to disclose to a supervisor or board an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation;

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of a law, rule, or regulation by the employer; or

(3) Objects to or refuses to participate in any activity, policy, or practice in violation of a law, rule, or regulation.

Md. Code, Health. Occ. § 1-502; *see also Mathews v. Choptank Comm. Health Sys., Inc.*, No. 20-1255, 2020 WL 7707041, at*19 (D. Md. Dec. 28, 2020).  The protections provided under the statute only apply if:

> The employee has a reasonable, good faith belief that the employer has, or still is, engaged in an activity, policy, or practice that is in violation of a law, rule, or regulation;
>
> (1) The employer's activity, policy, or practice that is the subject of the employee's disclosure poses a substantial and specific danger to the public health or safety; and
>
> (2) Before reporting to the board:
>
> (i) The employee has reported the activity, policy, or practice to a supervisor or administrator of the employer in writing and afforded the employer a reasonable opportunity to correct the activity, policy, or practice; or
>
> (ii) If the employer has a corporate compliance plan specifying who to notify of an alleged violation of a rule, law, or regulation, the employee has followed the plan.

*Id.* at § 1-503.  An "employee" is defined under the Act as "any individual licensed or certified by a board under [the Health Occupations Article] who performs services for and under the control and direction of an employer for wages or other remuneration." *Id.* § 1–501(c)(1); *see also Parks v. Alpharma, Inc.*, 25 A.3d 200, 212 (Md. 2011) (noting the act "specifically protected 'licensed and certified' healthcare employees that reported violations") (citing *Lark v. Montgomery Hospice*, 994 A.2d 968, 976–77 (Md. 2010)).

### E.    District Of Columbia Wrongful Discharge

Under District of Columbia law, an employer may discharge an at-will employee at any time and for any reason, or for no reason at all.  *Bereston v. UHS of Delaware, Inc.*, 180 A.3d 95, 104 (D.C. 2018).  In this regard, the District of Columbia Court of Appeals has held that "a designedly 'narrow' exception to this common-law rule, under which an at-will employee may have a claim sounding in tort for wrongful discharge if the employer's 'sole' (or at least 'predominant') reason for terminating the employee was the employee's refusal to break the law or was in some other respect contrary to a clear mandate of public policy.'"  *Id*.

## F.    The False Claims Act

The Fourth Circuit has held that the False Claims Act discourages fraud against the federal government by imposing liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." *Young v. CHS Middle E., LLC*, 611 F. App'x 130, 132 ( 4th Cir. 2015); *see also* 31 U.S.C. § 3729(a)(1)(A).  The whistleblower provision of the False Claims Act prohibits retaliation "because of lawful acts done . . .  in furtherance of an action under [the FCA] or other efforts to stop 1 or more violations of [the FCA]." *See* 31 U.S.C. § 3730(h).  In this regard, the Fourth Circuit has held that the FCA "protect[s] employees while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together." *Young*, 611 F. App'x at 132 (quoting *United States ex rel. Yesudian v. Howard Univ.,* 153 F.3d 731, 739 (D.C.Cir. 1998)).  And so, to survive a motion to dismiss an FCA retaliation claim, a plaintiff must plausibly allege that: (1) she engaged in a protected activity; (2) the employer knew about these acts; and (3) the employer discharged her as a result of these acts.  *Id*.  The Plaintiff's allegations "need pass only Civil Procedure Rule 8(a)'s relatively low notice-pleadings muster." *Id*.

## IV.    LEGAL ANALYSIS

The Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6) and 21, upon the following grounds:  (1) the Plaintiff is not entitled to relief under the MHCWWPA, because she was not a Maryland employee and her complaints are not protected under that statute; (2) the Plaintiff's wrongful discharge claim is improper, because she has not alleged that any District of Columbia law was violated and the D.C. Licensure Act has its own statutory remedies; (3) the Plaintiff is not entitled to relief under the FMLA and DCFMLA, because: (a) she was not eligible for leave under those statutes; (b) she has not alleged facts to show interference under the statutes; and (c) she has not alleged facts to show retaliation under the statutes; (4) the Plaintiff also fails to state a retaliation claim under the FCA, because: (a) she does not state which Defendant would have submitted a false statement to obtain Medicare or Medicaid funds; (b) she alleges no factual basis for an objectively reasonable belief that the Defendants made any false statements to the Government; and (c) she fails to allege facts to suggest that the Defendants were on notice of a FCA violation. ECF No. 13-1 at 8–17.  In addition, the Defendants argue that the Court should dismiss all claims against IAH in this matter, pursuant to Fed. R. Civ. P. 21, because IAH is not a proper party to this case.  *Id*. at 17–

11

19. And so, the Defendants request that the Court dismiss the complaint, or, alternatively, dismiss IAH from the case. *Id*. at 19.

The Plaintiff counters that the Court should not dismiss this matter, or dismiss IAH from the case, because: (1) the amended complaint alleges that IAH, Ingleside and Ingleside Rock Creek shared management, controlled her duties, pay and discipline, and jointly participated in the decision to terminate her employment; (2) she is a covered employee under the MHCWWPA and she engaged in protected activity under that statute; (3) she has alleged facts to support applying the public policy exception to wrongful termination claims under District of Columbia law; (4) she has sufficiently alleged a retaliation claim under Section 3730(h) of the FCA; and (5) she has sufficiently alleged facts to show interference and retaliation under the FMLA and DCFMLA. ECF No. 20-1 at 9–26. In addition, the Plaintiff argues that the Defendants improperly rely upon facts outside of the pleadings in their motion to dismiss. *Id*. at 9. And so, the Plaintiff requests that the Court deny the Defendants' motion. *Id*. at 26.

For the reasons that follow, a careful reading of the amended complaint shows that the Plaintiff alleges sufficient facts to state plausible claims under the MHCWWPA, District of Columbia wrongful discharge law, and Section 3730(h) of the False Claims Act. But the amended complaint makes clear that the Plaintiff has not alleged sufficient facts to show that the Defendants denied her request for leave under the FMLA, or a causal connection between her FMLA-protected activity and the termination of her employment, to state plausible FMLA and DCFMLA interference and retaliation claims in this case. Lastly, the amended complaint also makes clear that the Plaintiff has alleged sufficient facts to show that IAH jointly controlled the nature and terms of her employment, to plausibly allege claims against IAH arising from her work at Ingleside Rock Creek. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' renewed motion to dismiss (ECF No. 13) and (2) DISMISSES Counts III and IV of the amended complaint.

### A.        The Plaintiff States A MHCWWPA Claim

As an initial matter, the Defendants argue without persuasion that the Plaintiff fails to state a plausible claim under the MHCWWPA in Count I of the amended complaint. The MHCWWPA addresses protections for health care worker whistleblowers, and the statute provides that:

> [A]n employer may not take or refuse to take any personnel action as reprisal against an employee because the employee:
>
> (1) Discloses or threatens to disclose to a supervisor or board an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation;
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of a law, rule, or regulation by the employer; or
>
> (3) Objects to or refuses to participate in any activity, policy, or practice in violation of a law, rule, or regulation.

Md. Code, Health. Occ. § 1-502; *see also Mathews v. Choptank Comm. Health Sys., Inc.*, No. 20-1255, 2020 WL 7707041 (D. Md. Dec. 28, 2020). The protections provided under the statute only apply if:

> (1) The employee has a reasonable, good faith belief that the employer has, or still is, engaged in an activity, policy, or practice that is in violation of a law, rule, or regulation;
>
> (2) The employer's activity, policy, or practice that is the subject of the employee's disclosure poses a substantial and specific danger to the public health or safety; and
>
> (3) Before reporting to the board:
>
>> (i) The employee has reported the activity, policy, or practice to a supervisor or administrator of the employer in writing and afforded the employer a reasonable opportunity to correct the activity, policy, or practice; or
>>
>> (ii) If the employer has a corporate compliance plan specifying who to notify of an alleged violation of a rule, law, or regulation, the employee has followed the plan.

*Id.* at § 1-503. Relevant to this dispute, the MHCWWPA provides that an "employee" is under the Act defined as "any individual licensed or certified by a board under [the Health Occupations Article] who performs services for and under the control and direction of an employer for wages or other remuneration." *Id.* at § 1–501(c)(1); *see also Parks v. Alpharma, Inc.*, 421 Md. 59, 80, 25 A.3d 200, 212 (2011) (noting the act "specifically protected 'licensed and certified' healthcare employees that reported violations. . . ") (citing *Lark v. Montgomery Hospice*, 994 A.2d 968, 976–77 (Md. 2010). And so, the Court reads the plain text of the MHCWWPA to

13

prohibit Maryland employers from retaliating against health care workers who are licensed and/or practice in Maryland.

The Court is satisfied that the Plaintiff alleges a plausible claim under the MHCWWPA in this case for two reasons. First, the amended complaint contains sufficient factual allegations to show that the Plaintiff is a covered employee under the statute. In Count I of the amended complaint, the Plaintiff alleges that she is a registered nurse licensed under Maryland law. ECF No. 10 at ¶¶ 105 and 112. An "employee" is defined under the MHCWWPA as "any individual licensed or certified by a board under [the Health Occupations Article] who performs services for and under the control and direction of an employer for wages or other remuneration." *Id.* at § 1-501(c)(1). And so, accepted as true, the Plaintiff's factual allegations show that she is a covered employee under the MHCWWPA.

The Plaintiff also alleges facts to show that her employer is based in Maryland. In the amended complaint, the Plaintiff alleges that she provided nursing services for the Defendants, including Ingleside and IAH, which maintain their corporate headquarters in Rockville, MD. ECF No. 10 at ¶¶ 5–12; 28, 31–34 and 108–09. The Plaintiff also alleges that she was hired in Maryland, reported to Maryland executives, received payroll from Maryland and was terminated by Maryland corporate officers. *Id*. at ¶¶ 29, 54, 61, 108–09.

While the Defendants correctly observe that the Plaintiff does not allege that she performed any work in Maryland, the Court does not read the text of the MHCWWPA to limit the statute's reach to employees who work in Maryland. The Defendants also point to no case law holding that working in Maryland is a requirement under the MHCWWPA. ECF No. 13-1 at 6–9. Given this, the Court is satisfied that the factual allegations in the amended complaint are sufficient to show that the Plaintiff falls with the scope of the MHCWWPA.

Second, the Court is also satisfied that the Plaintiff alleges facts that, taken as true, show that her complaints to the Defendants about their request that she work simultaneously as the CSCD, and wellness nurse constitute protected activity under the MHCWWPA. As discussed above, the MHCWWPA prohibits an employer from taking, or refusing to take, any personnel action as reprisal against an employee because the employee, among other things, "[d]iscloses or threatens to disclose to a supervisor or board an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation," or "[o]bjects to or refuses to participate in any activity, policy, or practice in violation of a law, rule, or regulation." Md. Code, Health. Occ. at

14

§ 1-502.  In the amended complaint, the Plaintiff alleges that she objected to the Defendants' request that she serve as the CSCD for IAH, while simultaneously working as a wellness nurse at Ingleside Rock Creek.   ECF No. 10 at ¶¶ 62 and 72.  The Plaintiff also alleges that she discovered that the purpose of this request "was to show [District of Columbia] regulators that [IAH] had a full time Client Service Coordinator," when it in fact did not.  *Id*. at ¶¶ 67–69.

The Plaintiff also alleges that she had a reasonable suspicion that the Defendants were violating state and local laws and regulations that apply to nursing homes and home care, by requesting that she serve in the dual roles of CSCD and wellness nurse.  *Id*. at ¶¶68, 72–74.  In this regard, the Plaintiff further alleges that she informed the Defendants that it would be unlawful and unethical for her to represent herself to IAH's regulators as the CSCD for IAH, while maintaining her wellness nurse position.  *Id*.  And so, taken as true, the Plaintiff's factual allegations show that she disclosed, or threatened to disclose, a practice of her employer that she reasonably believed would be a violation of a law, rule, or regulation, and that she objected to, and/or refused to participate in, the Defendants' proposed practice, as required under the MHCWWPA.[2]

Given the factual allegations in the amended complaint, the Plaintiff has plausibly alleged a claim under the MHCWWPA.  And so, the Court DENIES the Defendants' motion to dismiss the Plaintiff's MHCWWPA claim in Count I of the amended complaint.

### B.    The Plaintiff States A Wrongful Discharge Claim

The Court also declines to dismiss the Plaintiff's wrongful discharge claim in Count II of the amended complaint.  Under District of Columbia law, an employer may discharge an at-will employee at any time and for any reason, or for no reason at all.  *Bereston v. UHS of Delaware, Inc.*, 180 A.3d 95, 104 (D.C. 2018).  But, the District of Columbia Court of Appeals has held that

---

[2] The Defendants also argue without persuasion that the Plaintiff fails to show that her complaints are covered by the MHCWWPA, because: (1) she does not identify a violated Maryland law; (2) she fails to allege facts to show the reasonableness of her belief that the request was unlawful and (3) she has not described any danger to health or safety related to the Defendants' request.  While the Defendants correctly observe that the Plaintiff cites to a violation of District of Columbia law in the amended complaint, the Plaintiff also alleges the Defendants' request to serve as both the CSCD and wellness nurse would violate he Plaintiff's professional and ethical obligations under her Maryland nursing license.  ECF No. 10 at ¶¶ 75 and 90.  The Plaintiff also alleges facts to show why she believed that the Defendants were in violation of certain regulations applicable to obtaining funding under the Medicare and Medicaid programs (*id.* at ¶¶ 85 and 95) and to show how the Defendants' request would have endangered patient safety (*id.* at ¶¶ 45, 73 and 116).

"a designedly 'narrow' exception to this common-law rule, under which an at-will employee may have a claim sounding in tort for wrongful discharge if the employer's 'sole' (or at least 'predominant') reason for terminating the employee was the employee's refusal to break the law or was in some other respect contrary to a clear mandate of public policy.'" *Id.* The Plaintiff alleges facts in the amended complaint to support applying the exception in this case.

In Count II of the amended complaint, the Plaintiff alleges that the Defendants' request that she simultaneously serve as the CSCD, and wellness nurse violated the D.C. Licensure Act of 1983 and its implementing regulations. ECF No. 10 at ¶¶134–36. The Plaintiff also alleges the purpose of the Defendants' request "was to show [District of Columbia] regulators that [IAH] had a full time Client Service Coordinator," even though she could not meet the statutory duties of that role. ECF No. 10 at ¶¶ 67–69. In addition, the Plaintiff alleges that she was unqualified for the CSCD position. *Id.* at ¶ 139. And so, the amended complaint makes clear that the Plaintiff contends that the Defendants' request was contrary to District of Columbia public policy and law.

The Defendants, nonetheless, argue that the Plaintiff's wrongful discharge claim is not viable, because, as a registered nurse, she met the primary qualification for the CSCD position and, thus, there can be no violation of the D.C. Licensure Act. ECF No. 13-1 at 10. But, the Defendants' argument ignores the Plaintiff's allegations in the amended complaint that she was unable to fulfill all the statutory duties for the CSCD position while also serving as a wellness nurse. The Defendants' argument that the Plaintiff cannot prevail on this claim because the D.C. Licensure Act contains its own statutory remedies is also unconvincing. *Id.* at 10–11. And so, the Court also DENIES the Defendants' motion to dismiss the Plaintiff's wrongful discharge claim in Count II of the amended complaint.

## C.   The Plaintiff States A Retaliation Claim Under The FCA

Turning to the Plaintiff's FCA retaliation claim in Count V of the amended complaint, the amended complaint also shows that this claim is plausible. To plead a FCA retaliation claim, the Plaintiff must allege facts to show: (1) engagement in protected activity, (2) employer knowledge of that activity, and (3) adverse action motivated by the protected activity. *See U.S. ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 200 (4th Cir. 2018). In this regard, there are two types of protected activity that satisfy the first element of a Section 3730(h) retaliation claim: (1) the Plaintiff has taken action, by filing an action under the FCA, or when litigation is a distinct

16

possibility and (2) the Plaintiff has undertaken other efforts to stop one or more violations of the FCA. *Grant*, 912 F.3d at 201. The Fourth Circuit has held that the second type of protected activity requires an objective reasonable standard. *Id*. And so, the protected activity must be motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA. *Id*.

The Plaintiff has alleged facts to meet this standard in the amended complaint for several reasons. With regard to the protected activity element of her retaliation claim, the Plaintiff alleges in Count V of the amended complaint that she engaged in a protected activity by lodging complaints with her employers in an effort to stop the Defendants from violating the False Claims Act. ECF No. 10 at ¶¶ 89–91; 221–30 (alleging, among other things, that the Plaintiff complained to the Defendants and refused to allow her nursing license to be used as the Client Service Coordinator, or Director, because she reasonably believed doing so would violate the law).

The Plaintiff also alleges that the Defendants knew about her concerns. Notably, the Plaintiff alleges that she lodged her complaints with Mr. Basil between March 15, 2024, and March 18, 2024, to satisfy the second element of her FCA retaliation claim. ECF No. 10 at ¶¶ 88–89.

Lastly, the Plaintiff also alleges facts to show an adverse action motivated by her protected activity. In this regard, the Plaintiff alleges that the Defendants terminated her employment, because she objected to their request to simultaneously serve as the CSCD and wellness nurse, due to concerns that doing so would violate various laws and regulations, including the laws governing submitting claims for reimbursement under the Medicare and Medicaid programs. *Id*. at ¶¶ 94–97; 238–41. While the Defendants correctly observe that the Plaintiff does not identify which of the three Defendants receive Medicare or Medicaid funding, the amended complaint does contain facts to explain why the Plaintiff believes that all three Defendants receive Medicare and/or Medicaid funding and why their request would have resulted in the submission of false claims under the FCA. *Id*. at ¶¶ 47, 65, 217–22 and 228–30 (alleging, among other things, that the Defendants attempted to falsely list her as IAH's Client Service Coordinator, or Director to deceive the D.C. regulators, so that IAH could maintain licensure appearances and receive Medicaid reimbursements.).

The Plaintiff's factual allegations are sufficient to state a retaliation claim under the FCA.

17

*Grant*, 912 F.3d at 201–02.  And so, the Court also DENIES the Defendants' motion to dismiss the Plaintiff's FCA retaliation claim in Count V of the amended complaint.

> D.      **The Plaintiff Fails To State A FMLA Claim**

The Defendants' arguments to dismiss the Plaintiff's FMLA and DCFMLA  interference and retaliation claims in Counts III and IV of the amended complaint are on firm footing.  To prevail on an interference with FMLA leave claim, the Plaintiff must show: "(1) that she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that interference caused harm."  *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (citations omitted).  The Fourth Circuit has cautioned, however, that requesting and taking FMLA leave "does not prevent 'an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior.'"  *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 249 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2595, 209 L. Ed. 2d 732 (2021) (quoting *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 304–05 (4th Cir. 2016)).  The Fourth Circuit has also explained that "an employer does not interfere with the exercise of FMLA rights where it terminates an employee's employment based on the employer's honest belief that the employee is not taking FMLA for an approved purpose."  *See Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 396 (4th Cir. 2013) (citing *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 680–81 (7th Cir.1997)).

In this case, the Plaintiff appears to concede that she was not eligible to request leave under the FMLA and/or DCFMLA prior to the termination of her employment.  An FMLA "eligible employee" must have been employed "for at least 12 months." *See* 29 U.S.C. § 2611(2)(A)(i); *accord* D.C. Code Ann. § 32-501(1)(A)(i).  Here, the Plaintiff alleges that she began employment with Defendants on March 15, 2023, and that she notified Defendants on March 4, 2024, that she would need FMLA leave beginning on March 14, 2024.  ECF No. 10 at ¶¶ 54, 83, 162, 189.  Given this, the Plaintiff would not have been eligible to take FMLA leave until on or after March 15, 2024.  *See Adams v. Whitestone Grp., Inc.*, 2022 WL 861392, at *4 (D. Md. March 23, 2022) (noting eligibility "prior to the first day requested for leave" is a threshold element of an FMLA claim).

Second, the amended complaint lacks facts to show that the Defendants denied the Plaintiff's FMLA leave request and, if so, when that denial occurred.  In the amended complaint, the Plaintiff alleges that the Defendants neither asked her to complete an FMLA and DCFMLA certification, nor provide her with

18

FMLA and DCFMLA paperwork.  ECF No. 10 at ¶ 164.  Given this, it is not clear from reading the amended complaint whether and when the Plaintiff actually requested FMLA leave.  While the Plaintiff alleges that the Defendants acknowledged her leave request, and "subsequently called [her] into a termination meeting before her scheduled leave began," there are no facts in the amended complaint to show that the Defendants actually denied her leave request.  *See generally* ECF No. 10.  The Court also observes that the Fourth Circuit has held that requesting and taking FMLA leave "does not prevent 'an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior.'"  *Fry*, 964 F.3d at 249 (quoting *Vannoy*, 827 F.3d at 304–05).

Simply put, the amended complaint lacks facts to show that the Defendants denied the Plaintiff's FMLA leave request, or otherwise interfered with her right to take FMLA and DCFMLA leave.  And so, the Court GRANTS the Defendants' motion to dismiss the Plaintiff's FMLA and DCFMLA interference claims in Count IV of the amended complaint.

The Plaintiff's FMLA and DCFMLA retaliation claim in Count III of the amended complaint is also problematic, because the amended complaint lacks facts to show a causal link between the Plaintiff's FMLA leave request and her termination.  To state a claim for FMLA retaliation, the Plaintiff must allege facts to show:  (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal link between the two events.  *Adams v. Anne Arundel Cnty. Pub. Schs*, 789 F.3d 422, 429 (4th Cir. 2015).  But, even if the Plaintiff could show that she was eligible for and denied FMLA leave in this case, she cannot show that the Defendants terminated her employment *because of* her FMLA leave request.

The Plaintiff alleges in the amended complaint that she was terminated on March 18, 2024, during a meeting with the Defendants to discuss her refusal to agree to serve as the CSCD for IAH.  ECF No. 10 at ¶¶ 92–97.  While the Plaintiff alleges that the Defendants were aware of her FMLA leave request at the time of this meeting (*id*. at  ¶ 93), the amended complaint makes clear that the Plaintiff believed her complaints about the Defendants' alleged violation of laws, rules and regulations related to Medicare, nursing licenses and home care were the reason for the termination of her employment (*id*. at ¶¶ 95–103).

Given this, the factual allegations in the amended complaint belie the Plaintiff's claim that she was terminated because she requested leave under FMLA and DCFMLA.  And so, the Court also GRANTS the Defendants' motion to dismiss the Plaintiff's FMLA retaliation

19

claim in Count III of the amended complaint.

    **E.    The Court Declines To Dismiss Defendant IAH**

As a final matter, the Court declines to dismiss IAH as a Defendant in this matter at this stage in the litigation. The Defendants argue that IAH is not a proper defendant in this case, because the Plaintiff does not allege facts to show that IAH had any control over her employment. ECF No. 13-1 at 19–21. But the amended complaint contains several factual allegations to show that all three Defendants in this case jointly employed the Plaintiff. Notably, the Plaintiff alleges that IAH is wholly owned, controlled, and operated by Ingleside, and that Ingleside, Ingleside Rock Creek, and IAH jointly exercised authority over her job duties, wages, and termination. ECF No. 10 at ¶¶ 21–22, 25–35. The Plaintiff also claims that the same executives controlled all three companies and that the Defendants collectively made decisions about her employment. *Id*.

While the Defendants may dispute these factual allegations, the allegations, taken as true, are sufficient to plausibly state claims against IAH related to the Plaintiff's employment. *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 406 (4th Cir. 2015). And so, the Court also DENIES the Defendants' motion to dismiss IAH from this civil action. Fed. R. Civ. P. 21.

**V.    CONCLUSION**

For the foregoing reasons, the Court:

    (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' renewed motion to dismiss (ECF No. 13);

    (2) **DISMISSES** Counts III and IV of the amended complaint (ECF No. 10).

    A separate Order shall issue.

    **IT IS SO ORDERED.**

        s/Lydia Kay Griggsby
        LYDIA KAY GRIGGSBY
        United States District Judge

20